**KARNES, Ex parte, Appellant.**

Ohio Appeals, Sixth District, Williams County.

No. 324.   Decided November 9, 1953.

450

Newcomer, Newcomer & Shaffer, Bryan, for appellant.
C. William O'Neill, Atty. Genl., Columbus, Thomas R. Lloyd, Asst. Atty. Genl., Cambridge, for appellee.

**OPINION**

By CONN, J.

This is an appeal from a judgment of the court of common pleas denying the petition of relator and refusing to discharge the petitioner, in a habeas corpus proceeding begun in that court. The appeal is here on questions of law.

The record discloses that on March 25, 1950, Betty Sisco, now Betty Karnes, the petitioner, was committed to the Girls' Industrial School at Delaware, Ohio, as a delinquent child, by John H. Pfeiffer, Judge of the juvenile court of Williams County.

June 11, 1952, petitioner was released on parole from the school and placed in the custody of her parents, residing in Bryan, Ohio, where she continued to reside until her marriage December 6, 1952, to Robert D. Karnes. At the time of the marriage petitioner was 16 years of age. Following her marriage, petitioner and her husband lived in Defiance, Ohio, for a period of seven or eight months, part of which time in the home of her husband's parents. Thereafter, her husband not being able to provide a home for petitioner and upon his request, she returned to the home of her parents in Bryan, Ohio. The evidence tends to show that petitioner was willing to return to her husband whenever he could provide a home for her. There is no evidence that petitioner had abandoned her husband.

Petitioner obtained regular employment in Bryan and lived with her parents continuously to the time of these proceedings, and also promptly advised the Juvenile Field Counsellor for the School that she had returned to Bryan.

The petitioner was visited by the Juvenile Field Counsellor

regularly each month during her parole, including the period following her marriage. During this time, no specific charges had ever been made against petitioner that she had violated her parole and no complaint made by reason of her marriage or because she went to Defiance with her husband to live.

Sometime after she had returned to Bryan and shortly before her arrest, petitioner's husband informed her he had a home for her in Defiance, which she promptly investigated. Upon investigation, petitioner found that the place selected by her husband was in a dilapidated condition and unfit for human habitation and she so informed her husband. Thereupon petitioner's husband told her that if she did not return to him he would send her back to school.

Notwithstanding the situation thus presented, the field counsellor thereupon informed petitioner that she should return to her husband, which she was willing to do upon condition he provide a home and make provision for her support. In the meantime, petitioner continued to live with her parents and supported herself.

Thereafter, on or about July 30, 1953, the juvenile judge of Williams County, upon request of the Juvenile Field Counsellor, issued a warrant for the arrest of petitioner. Promptly following her arrest by the sheriff of Williams County, a writ of habeas corpus was obtained and petitioner was released on bond. Upon hearing on August 5, 1953, petitioner was discharged on the ground that there was not authority for issuing the warrant for her arrest.

Promptly thereafter and on the same day, a second warrant was issued by the juvenile judge upon request of the field counsellor, directed to the sheriff, and petitioner was again arrested. A second writ of habeas corpus was obtained and the petitioner was again released on bond, to appear August 13, 1953, at 9:30 a. m.

While the second habeas corpus proceeding was pending and petitioner had given an appearance bond, the Superintendent of the Girls' Industrial School, on August 10, 1953, issued an order, directed to the Chief of Police of Bryan, for the arrest of petitioner. The petitioner was arrested on or about August 12, 1953, and placed in the Williams County jail. A third petition for a writ of habeas corpus was immediately filed, being the petition in the instant case, returnable August 13, 1953, and again the petitioner was released on bond.

Upon the hearing, August 13, 1953, the court found petitioner was legally detained and ordered her remanded to the custody of the Sheriff and Chief of Police, the respondents.

The application of petitioner to fix supersedeas bond was denied. The judgment of the court was immediately journalized.

The trial judge stated in open court that he did not want petitioner kept in jail and further stated that the sheriff could relieve himself of the custody of petitioner by delivering her to the Superintendent of the School. However, this order, stated orally and not journalized, was without validity or legal effect.

From the finding and judgment of the common pleas court that petitioner had been legally detained, an appeal was taken to this court. Upon application, an order was entered herein staying execution upon giving bond in the sum of $200.00, conditioned as provided in §12223-14 GC (§2505.14 R. C.).

No formal assignments of error were filed herein but in oral argument and brief petitioner contended, among other things, that the judgment of the trial court was contrary to law and not supported by any evidence.

· We first take up the claim of petitioner that the judgment of the trial court is contrary to law. Our consideration of this claim leads us to the conclusion that it is well founded.

**Sec. 12183 GC (§2725.23 R. C.)** provides that "a person who is set at large upon a writ shall not be again imprisoned for the same offense * * *." The exceptions in the statute have no application in the instant case.

The arrest of petitioner was made by the Chief of Police of the City of Bryan at the place of her employment, on August 12, 1953, by virtue of an order issued by the Superintendent of the School under date of August 10, 1953. When the order was issued and the arrest made, petitioner had previously been "set at large upon a writ" in an earlier habeas corpus proceeding "for the same offense," and at the time of the second arrest was under an appearance bond, returnable August 13, 1953, at 9:30 o'clock a. m. as above stated. The basis for the warrant in each case was the same, that is: a breach of the conditions of the parole. This section was construed and applied in **Copelan, Chief of Police v. McHenry, 42 Oh Ap 200**. It is clear that the arrest and detention in the instant case contravened the statute and for this reason is contrary to law.

**Sec. 1639-22 GC (§2151.34 R. C.)** Juvenile Court Code, in mandatory terms provides that "no child under eighteen years of age shall be placed in any prison, jail or lock-up * * *."

The arrest of petitioner was made by the Chief of Police of the City of Bryan, one of the respondents herein, upon an order issued by the Superintendent of the School to arrest petitioner and notify the Superintendent when she has been

placed in detention. This order was issued under date of August 10, 1953, and the arrest of the petitioner followed two days later. Thereupon petitioner was taken to the county jail, where she was incarcerated for a period of time and until released in the habeas corpus proceedings. The county jail of Williams County is a prison within the meaning and inhibition of the statute, and petitioner's detention therein was unlawful.

We are of the opinion that the arrest and detention of petitioner, as disclosed on the record before us, was unlawful and that she should have been discharged.

We are of the opinion that the judgment of the trial court is erroneous for the further reason that it is not supported by sufficient evidence. We will as briefly as possible set forth the basis for the conclusion we have reached.

Sec. 2112-1 GC (§5141.36 R. C.) expressly provides that rules and regulations shall be established "under which the inmates of the Girls' Industrial School may be conditionally released upon parole * * *."

Sec. 2112-2 GC (§5141.37 R. C.) authorized the chief matron to enforce such rules "and return any inmate so on parole." The evident purpose of this statute is to secure obedience by parolees of the established rules and, upon a breach thereof, to authorize the arrest of any paroled inmate and return her to the school.

Sec. 2112-3 GC (§5141.38 R. C.) provides for the appointment by the chief matron of "not less than four discreet women" to act as parole officers. This section in express terms defines the duties of such officers as follows:

"The parole officers shall seek homes and employment for inmates who may be paroled and shall exercise a kindly supervision over the inmates while upon parole. The parole officers shall also investigate the qualifications and ability of parents and other persons who seek to receive paroled or discharged inmates into their homes."

The evidence offered on behalf of respondents tended to show that rules governing inmates on parole had been adopted prior to 1950 and that there had been a revision of the old regulations which have been in effect since March, 1952. A copy of "Regulations for all girls on parole" promulgated by the Superintendent, setting forth six specific requirements, was received in evidence.

The Superintendent, in answer to certain interrogatories, stated in writing that petitioner had violated rules 1 and 3 of the Regulations. Rule 1 provides that no girl shall leave her placement, her own home, foster home, or wage home, without the permission of the Superintendent, and Rule 3

454

provides that permission must be secured from the Superintendent before marrying.

Upon being paroled, petitioner resided with her parents, which was "her own home." Upon her marriage, she and her husband resided in Defiance, for a period of about eight months. Her husband not being able to provide a home for her, she returned to her parents in Bryan, upon the request of her husband.

There is no evidence that petitioner was given a copy of the rules or any instructions specifically governing the conduct of an inmate on parole and there is no evidence of misconduct otherwise. On each occasion when petitioner was arrested she was living in "her own home" and was regularly employed at a fair wage, awaiting the time when her husband could provide a home and support. Petitioner was visited regularly each month by the field worker, at her home in Bryan and in Defiance.

It is undisputed that petitioner was 16 years of age at the time of her marriage and that the parents of the parties gave their consent; and that the provisions of §3001-1 GC (§3101.01 R. C.) were observed. The marriage license was issued by the probate judge of Williams County.

It also appears that at no time was petitioner advised by the field counsellor that she was guilty of violating any regulation relating to her parole, including the rule requiring consent of the Superintendent of the School, before she could marry. The validity of this rule is challenged. However, in the light of the record of this case, it was not the violation of any rule or regulation that formed the basis for the two previous warrants for petitioner's arrest, nor for the arrest in the instant case. It is undisputed that the field counsellor gave petitioner the option to go back to her husband in Defiance or be taken back to School, even though the house the husband had selected was not fit for human habitation and there was no assurance that the husband would or could provide the necessaries of life. There was no authority in law or good conscience for the autocratic action taken by the field counsellor, which so clearly violated the rights of the petitioner.

We are of the opinion that the arrest and detention of petitioner in the instant case, as in the two previous cases, were without legal sanction, either on the law or the evidence, and that the judgment of the trial court should be reversed at the costs of respondents, and this cause remanded to the common pleas court for execution.

FESS and DEEDS, JJ, concur.

## KARNES, Ex parte, Appellant.

No. 324.   Decided November 9, 1953.

### APPEAL ON QUESTIONS OF LAW
### OPINION

Per CURIAM:

On August 14, 1953, notice of appeal was filed in this court from an order of the court of Common Pleas entered August 13, 1953, finding that the petitioner was lawfully detained by the Chief of Police of Bryan, Ohio, and the Sheriff of Williams County, Ohio, and remanding her to custody. On August 15, 1953, an order was made by this court ex parte staying execution until final determination of the appeal upon appellant giving bond conditioned as provided by §12223-14 GC.

This order further provided that upon the giving of such bond the petitioner-appellant be released from custody. Upon refusal of Evelyn R. Ethel, Superintendent of the Girls' Industrial School, upon presentation of a certified copy of the order of this court, to release appellant, an order was entered requiring said superintendent to show cause why she should not be adjudged in contempt of this court. Pursuant to the order, Mrs. Ethel appeared at the hearing in this court and was represented by counsel.

Although it was intimated in In re Lutzer v. Perry, 18 O. C. C., 826, that the refusal to issue a writ of habeas corpus was not reviewable on error, §12187 GC provides that proceedings upon a writ of habeas corpus may be reviewed on error as in other cases. Furthermore, an order denying the writ and remanding the petitioner to custody is an order affecting a substantial right within the contemplation of Sec. 6, Art. IV of the Ohio Constitution. This court therefore had jurisdiction to determine the appeal.

Ample authority is found in the appellate procedure act to issue a stay of execution pending an appeal. It is contended, however, that under §12163 GC the common pleas court of Williams County had no jurisdiction to order the release of the petitioner because she was an inmate of a benevolent or penal institution of this state, the location of which is fixed by statute. However, upon the appeal we have found that the petitioner was unlawfully detained by the Chief of Police and the Sheriff and have reversed the order remanding the petitioner to custody. We have discovered no statute fixing the location of the Girls' Industrial School.

At the hearing upon the order to show cause for contempt, it appears that Evelyn R. Ethel was present and actively participated in the habeas corpus proceedings. It further appears at the hearing that after ordering that petitioner be remanded to custody of respondents, the common pleas judge orally instructed them to deliver petitioner to the Superintendent of the School. But the journal entry merely finds that the petitioner was lawfully detained and remands petitioner to the custody of the respondents without any reference to the oral statement of the court.

By actively participating in the habeas corpus proceedings below, the Superintendent, in effect, became a party to that proceeding. She also had knowledge of the order of this court directing the girl's release upon giving bond. Until such time as the order of this court should be modified or vacated by appropriate proceedings, the Superintendent was bound to respect it. We therefore find Evelyn R. Ethel in contempt.

Subsequent to the hearing upon the contempt, the court has been informally advised by the Office of the Attorney General that on September 5, 1953, the petitioner was released on parole to her husband and is therefore no longer in custody of either the Superintendent of the School or the officers in Williams County. We further find that by releasing the petitioner said Superintendent has purged herself from such contempt.

Upon remand of this cause to the common pleas court, such of the costs incurred herein by reason of the proceedings in contempt are to be assessed against Evelyn R. Ethel.

FESS, CONN and DEEDS, JJ., concur.